**M. Ryan Casey, OSB # 152824**
ryan@rcaseylaw.com
THE CASEY LAW FIRM, LLC
PO Box 4577
Frisco, CO 80443-4577
Tel: (970) 372-6509

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| AMANDA THORNS, a consumer residing in Oregon, and SCOTT COLLIER, a consumer residing in Oregon, individually and on behalf of all others similarly situated, | Case No. 3:23-cv-1355 |
| Plaintiffs, | **CLASS ACTION ALLEGATION COMPLAINT** |
| v. | Unlawful Trade Practices (28 U.S.C. § 1332) |
| JOHNSON & JOHNSON, a New Jersey corporation; THE PROCTER & GAMBLE COMPANY, an Ohio corporation; and WALGREEN CO., an Illinois corporation, | DEMAND FOR JURY TRIAL |
| Defendants. | |

Plaintiffs AMANDA THORNS and SCOTT COLLIER ("Plaintiffs"), individually and on behalf of all others similarly situated, make the following allegations based on personal knowledge, and otherwise, upon information and belief:

### NATURE OF THE ACTION

1.    This case centers around Defendants' over-the counter drugs containing phenylephrine ("PE"). Such products include the following manufactured, marketed, distributed, and/or sold by Defendants JOHNSON & JOHNSON ("J&J"), THE PROCTER & GAMBLE COMPANY ("P&G"), and WALGREEN CO. ("Walgreens"):

- Severe Cold & Flu (Walgreens);

- Severe Sinus (Walgreens);

- Severe Sinus Congestion (Walgreens);

- Sinus Pressure & Pain (Walgreens);

- Tylenol Cold + Flu (J&J);

- Tylenol Cold Multi-Symptom (J&J);

- Tylenol Cough and Cold (J&J);

- Tylenol Sinus (J&J);

- Vicks DayQuil (P&G);

- Vicks NyQuil (P&G);

- Vicks QlearQuil (P&G); and

- Wal-Phed PE (Walgreens).

Collectively, these products and Defendants' other PE products are referred to herein as the "PE Drugs."

2.     Defendants' PE Drugs are marketed by each Defendant as effective for treating indications identified on the label, most often nasal congestion.

3.     On September 12, 2023, an FDA advisory panel unanimously voted 16-0 that PE is *not* effective for treating nasal congestion.[1] As stated by the panel, PE is "not effective as a nasal decongestant." Thus, it recommends avoiding unnecessary costs or delays in care by "taking a

---

[1] C. Jewett, A Decongestant in Cold Medicines Doesn't Work at All, an F.D.A. Panel Says, NEW YORK TIMES, https://www.nytimes.com/2023/09/12/health/cold-medicine-decongestant-fda.html? (last accessed Sept. 17, 2023).

drug that has no benefit."[2]

4.      At all relevant times, Defendants represented that their PE Drugs were properly branded and effective for treating the indications identified, including, *inter alia*, treating nasal congestion.

5.      These representations were false, as Defendants' PE Drugs were not effective for treating all the indications identified and/or were misbranded.

6.      Further, each Defendant willfully ignored scientific and industry knowledge concerning the lack of effectiveness of PE Drugs for treating the indications identified, and performed inadequate testing and quality oversight of their respective PE Drugs to ascertain properly the true efficacy of their PE Drugs for treating the indications identified (principally, nasal decongestion.

7.      Reasonable consumers, like Plaintiffs, have suffered an ascertainable loss of money, measured by the difference between the price paid for a properly branded product that effectively treated nasal congestion and the lower market value of a product that was misbranded and/or failed to effectively treat nasal congestion. As a result of Defendants' illegal conduct, the purchase price of the PE Drugs was greater than their objective market value.

8.      Accordingly, Plaintiffs bring this action individually and on behalf of the Class defined below, comprised of all individuals similarly situated within the State of Oregon, to redress the unlawful and deceptive practices employed by Defendants in connection with their labeling, marketing, and sale of PE Drugs.

9.      Plaintiffs seek redress for Defendants' reckless, knowing, and/or willful violations

---

[2] *Id.*

of Oregon's Unlawful Trade Practices Act, Or. Rev. Stat. §§ 646.605, *et seq.* (herein referred to as "OUTPA") and Defendants' Unjust Enrichment.

**JURISDICTION AND VENUE**

10.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§1332(d), because there is diversity of citizenship between members of the proposed Class and Defendants. Defendants are either incorporated and/or have their principal place of business outside the state in which Plaintiffs and members of the proposed Class reside. Furthermore, there are more than 100 Class Members and the amount-in-controversy exceeds $5,000,000 exclusive of interest and costs.

11.    This Court has personal jurisdiction over Defendants because Defendants are foreign corporations authorized to do business in Oregon and registered with the Oregon Secretary of State, and have sufficient minimum contacts with Oregon or otherwise intentionally avail themselves of the laws and markets of Oregon, through the promotion, sale, marketing and distribution of the Product in Oregon, to render the exercise of jurisdiction by the Oregon courts permissible.

12.    Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because Defendants' improper conduct alleged in this complaint occurred in and/or emanated from this judicial district, because Defendants have caused harm to Class Members residing in this district, and/or because Defendants are subject to personal jurisdiction in this district.

**THE PARTIES**

13.    Plaintiff AMANDA THORNS is an individual, a resident of Multnomah County, and a member of the Class alleged herein, having purchased PE Drugs (including but not limited to Walgreens Severe Cold & Flu) during the Class Period.

14.    Plaintiff SCOTT COLLIER is an individual, a resident of Multnomah County, and

a member of the Class alleged herein, having purchased PE Drugs (including but not limited to Tylenol Cold + Flu, Vicks DayQuil, and Vicks NyQuil) during the Class Period.

15.     Defendant JOHNSON & JOHNSON ("J&J") is a New Jersey corporation with its principal place of business in New Brunswick, New Jersey.

16.     Defendant THE PROCTER & GAMBLE COMPANY ("P&G") is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

17.     Defendant WALGREEN CO. is an Illinois corporation with its principal place of business in Deerfield, Illinois.

18.     At all relevant times, Defendants engaged in the manufacturing, sale, and/or distribution of misbranded and ineffective PE Drugs in Oregon and throughout the United States, and are responsible for the illegal label representations and/or conduct likely to cause confusion complained of herein.

19.     Defendants transacted and conducted business within the State of Oregon that relates to the allegations in this Complaint, and derived substantial revenue from goods and products bought and used in the State of Oregon (including but not limited to Multnomah County), including the PE Drugs at issue.

20.     Defendants purposefully availed themselves of the privilege of conducting activities within the State of Oregon, thus invoking the benefits and protections of its laws.

## FACTUAL ALLEGATIONS

### A.     History of PE Drugs

21.     Phenylephrine ("PE") is a specific alpha-1 adrenergic receptor agonist that works by temporarily constricting blood vessels. By contrast, pseudoephedrine ("PSE") is a relatively less selective agonist that acts on both alpha and beta-adrenergic receptors. The literature reports that PSE is more lipophilic than PE and thus is more accessible to the central nervous system by

crossing the blood-brain barrier (Gheorghiev et al. 2018). The vasoconstriction effect of PSE is likely contributed to by an indirect action via release of norepinephrine in synaptic nerve terminals (Gorodetsky 2014).

22.    The FM for OTC nasal decongestant drug products, issued in 1994, classified the PEH as a GRASE nasal decongestant when administered orally (immediate-release [IR] formulations) or intranasally (M012.80, previously 21 CFR 341.80). The PEB, an IR effervescent tablet for oral administration, was added to the monograph in 2006, based on pharmacokinetic (PK) data demonstrating that it has similar bioavailability to PEH.

23.    The PE drugs at issue in this case fall within two categories:

        a.    Phenylephrine hydrochloride

        b.    Phenylephrine bitartrate

24.    The Federal Register, dated August 23, 1994 on page 433861 under section III, first allowed Phenylephrine hydrochloride to be sold: "Based on the available evidence, the agency is issuing a final monograph establishing conditions under which OTC nasal decongestant drug products are generally recognized as safe and effective and not misbranded. Specifically, the following ingredients are included in the final monograph as OTC oral nasal decongestants: Phenylephrine hydrochloride, pseudoephedrine hydrochloride, and pseudoephedrine sulfate."[3]

25.    Subsequently, Phenylephrine bitartrate was included in the Federal Register on August 1, 2006 on page 833582: "The Food and Drug Administration (FDA) is issuing a final rule to amend the final monograph (FM) for over-the-counter (OTC) nasal decongestant drug products

---

[3] Cold, Cough, Allergy, Bronchodilator, and Antiasthmatic Drug Products for Over-the-Counter Human Use; Final Monograph for OTC Nasal Decongestant Drug Products, 59 Fed. Reg. 43386-01 (Aug. 23, 1994).

(drug products used to relieve nasal congestion due to a cold, hay fever, or other upper respiratory allergies) to add phenylephrine bitartrate (PEB), both individually and in combination drug products in an effervescent dosage form, as generally recognized as safe and effective (GRASE)."[4]

26.     As a result of the market withdrawal and restrictions on the sale of other α-adrenergic agonists in the early and mid-2000s, Pfizer, Inc, introduced a replacement product (Sudafed-PE) that contained PE. Other manufacturers, including Defendants in this case, similarly followed suit by releasing products containing PE.

**B.    Questions Surrounding the Efficacy of PE Drugs**

*27.*    Phenylephrine is an over-the-counter (OTC) ingredient marketed in both single ingredient and combination products.[4] It has been available in the United States more than 75 years and globally (e.g., Canada, Australia, UK).

28.     PE has largely been approved for the temporary relief of nasal congestion due to the common cold, hay fever, or other respiratory allergies, or allergic rhinitis under the cough, cold, allergy, bronchodilator, and anti-asthmatic drug products monograph ("final monograph" or "CCABADP").

29.     On May 1, 2006, two professors at the University of Florida published a letter questioning the effectiveness of PE for nasal congestion based upon the results of multiple double blind, placebo-controlled studies, that show PE was no more effective than placebo in reducing

---

[4] Cold, Cough, Allergy, Bronchodilator, and Antiasthmatic Drug Products for Over-the-Counter Human Use; Amendment of Monograph for OTC Nasal Decongestant Drug Products, 71 Fed. Reg. 43358-01 (Aug. 1, 2006).

nasal airway resistance.[5] Moreover, the letter notes that the studies relied on by the FDA to approve PE were unpublished, manufacturer-sponsored studies conducted by commercial testing laboratories.

30.    On February 1, 2007, those professors filed a Citizens Petition with the FDA concerning PE Drugs.[6]

31.    Specifically, the Petition requested the dosage of oral phenylephrine (PE) be re-evaluated and that approval for use in children under twelve years old be withdrawn.[7] The Petition further stated that there was no data on the safety of PE in children under twelve years old.[8]

32.    As a result of the 2007 Citizens Petition, the FDA's Nonprescription Drugs Advisory Committee met on December 14, 2007 and concluded that the products could continue to be sold, but 9 of 12 of the committee members voted that new studies on response to higher doses were required.[9] Further, a member of the Division of Nonprescription Drug Products expressed a preference for subjective symptom scores over objective measurement of nasal airway resistance to support the use of PE for temporary relief of nasal congestion.[10]

---

[5] L. Hendeles and R. Hatton, *Oral phenylephrine: An ineffective replacement for pseudoephedrine?*, 118 J. ALLERGY AND CLINICAL IMMUNOLOGY 279 (2006), https://www.jacionline.org/article/S0091-6749(06)00633-6/fulltext.

[6] L. Hendeles, et al., Citizens Petition to U.S. Food and Drug Admin. (Feb. 1, 2007), https://downloads.regulations.gov/FDA-2007-P-0108-0005/attachment_1.pdf.

[7] *Id.* at 1-2.

[8] *Id.* at 2-3.

[9] U.S. Food and Drug Admin., Summary Minutes of the NDAC meeting (Dec. 14, 2007), avail. at https://wayback.archive-it.org/7993/20170403222236/https://www.fda.gov/ohrms/dockets/ac/07/minutes/ 2007-4335m1-Final.pdf. (last accessed Sep. 17, 2023).

[10] L. Hendeles and R. Hatton, Citizens Petition to U.S. Food and Drug Admin. (Nov. 4, 2015), avail. at https://truthinadvertising.org/wp-content/uploads/2023/02/Hatton-Hendeles-2015-Citizens-Petition-re-oral-phenylephrine.pdf, at 2.

33.     Schering-Plough Pharmaceuticals responded to the recommendations of the Committee and the Division by conducting a multicenter, phase 2, parallel trial among 539 adults with seasonal allergic rhinitis. The results of the study revealed no significant differences between placebo and active treatment groups.[11]

34.     Another manufacturer, McNeil Consumer Healthcare, conducted a pharmacokinetic, safety and cardiovascular tolerability study of PE. Similarly, this study revealed no difference in safety endpoints between placebo and 10, 20 and 30 mg of PE even though systemic exposure increased disproportionately with dose.  According to the petitioners, "This is noteworthy since both the relief of congestion and systemic endpoints such as change in blood pressure and pulse are mediated by alpha adrenergic stimulation. The absence of a significant effect on the latter at the higher doses suggest that the concentrations reached are not sufficient to stimulate alpha adrenergic receptors."[12]

35.     On November 4, 2015, the authors of the 2007 Citizen Petition filed an additional Citizens Petition asking the FDA "to remove oral phenylephrine from the Final Monograph for OTC nasal decongestant products." Specifically, the petition asked the FDA to remove Phenylephrine and to remove phenylephrine bitartrate (PEB), "both individually and in combination drug products in an effervescent dosage form[.]"[13]

36.     According to the 2015 Citizens Petition, "Two additional studies published in 2009 provide further evidence of the absence of a decongestant effect from the FDA-approved nonprescription dose of 10 mg. Horak et al conducted a 3-way crossover, placebo-controlled study

---

[11] *Id.*

[12] *Id*. at 3.

[13] *Id.* at 1.

of the nasal decongestant effect of single doses of PE 12 mg, pseudoephedrine 60 mg or placebo among 39 grass-sensitive adults exposed to grass pollen in the Vienna Challenge Chamber. PE was not significantly different from placebo in the mean change in subjective nasal congestion scores whereas pseudoephedrine, a positive control in the study, decreased congestion significantly greater than placebo and PE."[14]

37.    The 2015 Citizens Petition was further supported by the American Academy of Allergy, Asthma & Immunology.[15]

38.    On information and belief, at this time, each Defendant did not do additional testing and quality oversight of their respective PE Drugs to ascertain the true effectiveness for treating nasal congestion, or deliberately suppressed or avoid doing so. Had they done so and/or disclosed the results, the data would lead to the same inexorable conclusion reached on September 12, 2023 by an FDA Advisory Panel: PE is not effective for treating nasal congestion at all.

**C.    The FDA Advisory Panel's Unanimous Vote**

39.    On September 12, 2023, the FDA Advisory Panel on the Division of Nonprescription Drugs recommended that PE Drugs not be sold due to lack of efficacy.[16]

40.    In the FDA's Briefing Document regarding the hearing that took place on September 11-12, 2023, the FDA notes that it has been reviewing the clinical studies on the efficacy of PE since the 2007 Citizens Petition.[17]

---

[14] *Id.* at 4.

[15] Am. Academy of Allergy, Asthma & Immunology, Statement of Support of Citizens Petition (May 4, 2022), avail. at https://college.acaai.org/wp-content/uploads/2022/05/oral-phenylephrine-final-statement-in-support-of-citizens-petition-05-4-22.pdf (last accessed Sep. 17, 2023).

[16] U.S. Food and Drug Admin., Efficacy of Oral Phenylephrine as a Nasal Decongestant (Sep. 12, 2023), https://www.fda.gov/media/171915/download.

[17] *Id.*

41.    The Advisory Panel concluded,

In accordance with the effectiveness standard for determining that a category of over-the-counter (OTC) drugs is generally recognized as safe and effective that is set forth in 21 CFR § 330.10(a)(4)(ii), which defines effectiveness as: "a reasonable expectation that, in a significant proportion of the target population, the pharmacological effect of the drug, when used under adequate directions for use and warnings against unsafe use, will provide clinically significant relief of the type claimed", we have now come to the initial conclusion that orally administered PE is not effective as a nasal decongestant at the monographed dosage (10 mg of PE hydrochloride every 4 hours) as well as at doses up to 40 mg (dosed every 4 hours).[18]

42.    The Advisory Panel met for two days on September 11-12, 2023. During this meeting, FDA scientists presented the results of five studies conducted over the past two decades on the effectiveness of oral phenylephrine. All the studies concluded that the decongestant was no more effective than a placebo. The Advisory Panel further reevaluated the initial findings which supported PE Drugs' use and found that the results were inconsistent, did not meet modern study design standards and further that these studies may have data integrity issues:[19]

"In conclusion, we do believe that the original studies were methodologically unsound and do not match today's standard. By contrast, we believe the new data are credible and do not provide evidence that oral phenylephrine is effective as a nasal decongestant," said Dr. Peter Starke, an FDA official who led the review of phenylephrine.[20]

43.    At the conclusion of the meetings, members voted unanimously (16-0) that PE drugs were ineffective, paving the way for the drugs to be removed from the market.

---

[18] *Id.*

[19] B. Lovelace, FDA panel says common over-the-counter decongestant doesn't work, NBC NEWS (Sep. 12, 2023), https://www.nbcnews.com/health/health-news/fda-panel-says-common-counter-decongestant-phneylephrine-doesnt-work-rcna104424 (last accessed Sep. 17. 2023).

[20] *Id.*

44.     Following this vote by the Advisory Panel, the FDA will now need to decide whether PE Drugs can still be sold and whether drugs should lose their designation as Generally Recognized as Safe and Effective (GRASE).

**D.     Misbranded Drugs Are Illegal to Sell**

45.     Any drug not manufactured in accordance with cGMPs is deemed "adulterated" or "misbranded" and may not be distributed or sold in the United States. *See* 21 U.S.C. §§ 331(a), 351(a)(2)(B). States have enacted laws adopting or mirroring these federal standards.

46.     A drug is misbranded:

a.     "If its labeling is false or misleading in any particular"[21];

b.     "If any word, statement, or other information required … to appear on the label or labeling is not prominently placed thereon…in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use"[22];

c.     If the labeling does not contain, among other things, "the proportion of each active ingredient"[23];

d.     "Unless its labeling bears (1) adequate directions for use; and (2) such adequate warnings … against unsafe dosage or methods or duration of administration or application, in such manner and form, as are necessary for the protection of users"[24];

---

[21] 21 U.S.C. § 352(a)(1).

[22] 21 U.S.C. § 352(c).

[23] 21 U.S.C. § 352(e)(1)(A)(ii).

[24] 21 U.S.C. § 352(f).

e.      "If it purports to be a drug the name of which is recognized in an official

compendium, unless it is packaged and labeled as prescribed therein"[25]

f.      "if it is an imitation of another drug"[26];

g.      "if it is offered for sale under the name of another drug"[27];

h.      "If it is dangerous to health when used in the dosage or manner, or with the

frequency or duration prescribed, recommended, or suggested in

the labeling thereof"[28];

i.      If the drug is advertised incorrectly in any manner[29]; and/or

j.      If the drug's "packaging or labeling is in violation of an applicable

regulation."[30]

47.    The manufacture and sale of any misbranded drug is prohibited under federal law.[31]

48.    The introduction into commerce of any misbranded drug is also prohibited.[32]

49.    Similarly, the receipt in interstate commerce of any misbranded or misbranded drug

is also unlawful.[33]

50.    As articulated in this Complaint, Defendants' sale of PE Drugs that were not

---

[25] 21 U.S.C. § 352(g).

[26] 21 U.S.C. § 352(i)(2).

[27] 21 U.S.C. § 352(i)(3).

[28] 21 U.S.C. § 352(j).

[29] 21 U.S.C. § 352(n).

[30] 21 U.S.C. § 352(p).

[31] 21 U.S.C. § 331(g).

[32] 21 U.S.C. § 331(a).

[33] 21 U.S.C. § 331(c).

effective for treating the indications identified were misbranded in violation of the above-cited reasons.

51.     Plaintiffs' reference to federal law in this Complaint not in any attempt to enforce it, but to demonstrate that their state-law tort claims do not impose any additional obligations on any Defendant, beyond what is already required of them under federal law.

### i.     Defendants Made False Statements in the Labeling

52.     A manufacturer must give adequate directions for the use of a pharmaceutical drug so that a "layman can use a drug safely and for the purposes for which it is intended,"[34] and conform to requirements governing the appearance of the label.[35]

53.     "Labeling" encompasses all written, printed or graphic material accompanying the drug or device,[36] and therefore broadly includes nearly every form of promotional activity, including not only "package inserts" but also advertising.

54.     "Most, if not all, labeling is advertising.  The term 'labeling' is defined in the FDCA as including all printed matter accompanying any article.  Congress did not, and we cannot, exclude from the definition printed matter which constitutes advertising."[37]

55.     Because the labels on Defendants' PE drugs indicate that PE can be used to treat nasal congestion, the subject drugs were misbranded.

56.     It is unlawful to introduce a misbranded drug into interstate commerce.[38]  Thus, the

---

[34] 21 C.F.R. § 201.5.

[35] 21 C.F.R. § 801.15.

[36] *Id.* 65 Fed. Reg. 14286 (March 16, 2000).

[37] *U.S. v. Research Labs.,* 126 F.2d 42, 45 (9th Cir. 1942).

[38] 21 U.S.C. § 331(a).

CLASS ACTION ALLEGATION COMPLAINT – Page 14

PE Drugs purchased and ingested by Plaintiffs were unlawfully distributed and sold.

      **ii.**      **Each Defendant's Unlawful Statements to Consumers**

57.      Each Defendant engaged in unlawful practices with respect to their representations and omissions to consumers regarding their PE Drugs.

58.      P&G, for instance, touted its PE Drugs as effective for treating nasal congestion. Its website states:



59.      P&G further emphasized its drugs' effectiveness (see highlighting below):



60.      Each of P&G's PE Drugs contained PE as an advertised active ingredient

CLASS ACTION ALLEGATION COMPLAINT – Page 15

supposedly effective at treating nasal congestion:



61.    P&G's representations on its website, product packaging, product label, and other advertisements and promotions, were false, misleading, and/or likely to cause confusion or misunderstanding. Contrary to P&G's statements, and undisclosed by P&G, PE was not effective at all for treating nasal congestion. P&G knew, or should have known, this was the case.

62.    Defendants J&J and Walgreens make similar claims in their marketing, websites,[39] and labeling (as exemplified below):

---

[39]    *See, e.g.,* https://www.walgreens.com/store/c/walgreens-severe-cold-&-flu-day-&-night-combo-caplets/ID=prod6286382-product (describing PE as "nasal decongestant" in PE Drug which is used to relief, *inter alia*, "nasal congestion") (last accessed Sep. 18, 2023); https://www.tylenol.com/products/tylenol-cold-flu-severe-caplets (describing Tylenol Cold + Flu as "[c]onvenient caplets to tackle your tough cold and flu symptoms by clearing congestion, quieting coughs and relieving head and body aches") (last accessed Sep. 18, 2023).

CLASS ACTION ALLEGATION COMPLAINT – Page 16



63.    At all relevant times, each Defendant represented that their respective PE Drugs were effective for treating the indications identified (including nasal decongestion).

### iii.    Discovery of Defendants' Unlawful Acts and Practices

64.    Plaintiffs' and Class Members' causes of action accrued on the date the FDA announced that PE was not effective at treating the indications identified in Defendants' PE Drug labeling and packaging, that is, September 12, 2023. This is the first date when Plaintiffs and Class Members could have reasonably discovered Defendants' unlawful methods, acts, and/or practices as described herein.

65.    Each Defendant affirmatively concealed from Plaintiffs and other Class Members its unlawful conduct. Each Defendant affirmatively strove to avoid disclosing their knowledge of the ineffectiveness of their respective PE Drugs for treating the indications identified, and/or that such products were misbranded.

66.    For instance, no Defendant revealed to the public that their PE Drugs were *not*

effective at treating the indications identified, or that in fact PE was not effective at all to treat same (principally, nasal decongestion), despite reasons to believe the contrary due to their superior knowledge and position and the manufacturer or seller of their respective PE Drugs.

67.    To the contrary, each Defendant continued to represent and warrant that its respective PE Drugs were effective for treating the indications identified, principally nasal decongestion.

68.    Because of this, Plaintiffs and other Class Members did not discover, nor could they have discovered through reasonable and ordinarily diligence, each Defendant's unlawful methods, acts, and/or practices as alleged herein.

## CLASS ACTION ALLEGATIONS

69.    Plaintiffs bring this class action pursuant to Rules 23(a), 23(b)(2), and/or 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> **All persons in the State of Oregon who purchased Defendants'**
> **PE Drugs for personal use and not for resale.**

70.    Specifically excluded from the proposed Class are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of them. Also excluded from the proposed Class are the Court, the Court's immediate family and Court staff.

71.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint

72.    Plaintiffs meet the prerequisites of Rule 23(a) to bring this action on behalf of the Class.

73.    **Numerosity**: Membership in the Class is so numerous that separate joinder of each member is impracticable. The precise number of Class Members is unknown at this time but can be readily determined from Defendants' records. Plaintiffs reasonably estimate that there are at least thousands of persons in the Class.

74.    **Existence and predominance of common questions of law and fact:** Common questions of law and fact exist as to all Class and Subclass Members and predominate over any questions affecting on individual Class and Subclass members. These common legal and factual questions include, but are not limited to, the following:

    a.  Whether each Defendant represented its PE Drugs as effective for treating the indications identified (including nasal decongestion);

    b.  Whether each Defendant's PE Drugs were effective for treating the indications identified (including nasal decongestion);

    c.  Whether the PE Drugs as represented by the Defendants are inherently worth more than the products actually received by Class Members;

    d.  Whether Defendants' violations of OUTPA were willful, reckless, and/or knowing;

    e.  Whether Plaintiffs and the Class are entitled to statutory damages of $200 under OUTPA;

    f.  Whether Plaintiffs and the Class conferred a benefit on Defendants which would be unjust to retain; and

    g.  When Plaintiffs' and Class Members' causes of action accrued.

75.    **Typicality**:  Plaintiffs' claims are typical of Class Members' claims. Plaintiffs and Class Members all suffered the same type of economic harm.  Plaintiffs have substantially the same interest in this matter as all other Class Members, and their claims arise out of the same set

of facts and conduct as the claims of all other Class Members.

76.    **Adequacy of Representation**:  Plaintiffs are committed to pursuing this action and has retained competent counsel experienced in pharmaceutical litigation, consumer fraud litigation, class actions, and federal court litigation. Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of Class Members. Plaintiffs' claims are coincident with, and not antagonistic to, those of the other Class Members they seek to represent. Plaintiffs have no disabling conflicts with Class Members and will fairly and adequately represent the interests of Class Members.

77.    The elements of Rule 23(b)(2) are met. Defendants have acted on grounds that apply generally to Class Members so that preliminary and/or final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

78.    **Superiority**: A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Although many other Class Members have claims against each Defendant, the likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues would not be efficient, timely or proper. Judicial resources would be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. In addition, individualized rulings and judgments could result in inconsistent relief for similarly situated plaintiffs. Plaintiffs' counsel, highly experienced in pharmaceutical litigation, consumer fraud litigation, class actions, and federal court litigation, foresee little difficulty in the management of this case as a class action.

## **CLAIMS FOR RELIEF**

79.     Based on the foregoing allegations, Plaintiffs' claims for relief include the following:

## **FIRST CAUSE OF ACTION**

### **VIOLATIONS OF THE UNLAWFUL TRADE PRACTICES ACT**
**Or. Rev. Stat. §§ 646.605, *et seq.***
**Subsection 646.608(1)(b): causing likelihood of confusion or misunderstanding**

80.     Plaintiffs incorporate by reference paragraphs 1-68 as through fully set forth herein.

81.     Plaintiffs bring this claim under OUTPA, <u>Or. Rev. Stat.</u> §§ 646.605, *et seq.*, individually and on behalf of the Class, who were subject to Defendants' above-described illegal conduct.

82.     Plaintiffs and Defendants are "persons" within the meaning of O.R.S. § 646.605(4).

83.     Defendants are engaged in the sale of "goods" as defined by O.R.S. § 646.605(6)(a).

84.     Defendants are engaged in "trade" or "commerce" within the meaning of O.R.S. § 646.605(8), affecting consumers in Oregon and throughout the United States.

85.     Defendants engaged in the design, development, testing, packaging, promoting, marketing, advertising, distribution, labeling, and/or sale of PE Drugs.

86.     OUTPA prohibits "unfair *or* deceptive acts conduct in trade or commerce ...." O.R.S. § 646.608(1) (emphasis added). Due to the conduct described herein, Defendants willfully, knowingly, and/or recklessly used and/or employed a method, act or practice declared unlawful under OUTPA

87.     Defendants violated O.R.S. § 646.608(1)(b) by causing the likelihood of confusion or of misunderstanding as to the source of goods. Defendants' labeling causes the likelihood that

reasonable consumers confuse or misunderstand the PE Drugs as sourced from ingredients that effectively treat the identified indications (including nasal congestion), when in fact this is not the case.

88.    A product sourced from ingredients which effectively treat all the indications identified (including nasal congestion), which is how reasonably consumers would likely misunderstand the PE Drugs, is inherently worth more than the actual PE Drugs purchased by Plaintiffs and the Class, which were not sourced from such ingredients.

89.    Defendants' violations of O.R.S. § 646.608(1)(b) were willful as Defendants knew or should have known that the conduct complained of herein caused the likelihood of confusion or of misunderstanding as to the source of the PE Drugs, and violated OUTPA.

90.    Upon reasonable information and belief, Defendants caused the likelihood of confusion complained of herein with the knowledge that their conduct was illegal at the time the Defendants made the representations complained of herein.

91.    Further, Defendants recklessly and/or knowingly engaged in conduct which caused the likelihood of confusion or of misunderstanding as to the source of the PE Drugs.

92.    Defendants willfully and knowingly (and/or recklessly) represented the PE Drugs effectively treating the identified indications (including nasal congestion), which Defendants at all relevant times knew or should have known was not the case.

93.    Defendants intended to cause confusion as to the source of the PE Drugs as containing ingredients effectively treated the identified indications, as Defendants were aware (or should have been aware) that they could charge more for such products than products that do not effectively treat the identified indications.

94.    The illegal conduct complained of herein was no isolated incident or one-time

CLASS ACTION ALLEGATION COMPLAINT – Page 22

mistake; rather, it occurred over years with respect to every PE Drug manufactured, labeled, and sold by Defendants to Plaintiffs and the Class, which caused likelihood of confusion or of misunderstanding as to the source of the Products.

95.     Even after the vote of the FDA Advisory Panel, Defendants made no effort to refund either Plaintiffs or Class Members in response.

96.     As a result of Defendants' willful and knowing (and/or reckless) violations of O.R.S. § 646.608(1)(b), described above, Plaintiffs and the Class suffered an ascertainable loss of money or property.

97.     Plaintiffs and the Class lost money due to the difference between the value of the PE Drugs as marketed by the Defendants in a way that is likely to cause confusion or of misunderstanding, as inherently reflected in the purchase price, and the lesser value of the PE Drugs actually received by the Plaintiffs and the Class. Absent the Defendants' willful and knowing (and/or reckless) violations of O.R.S. § 646.608(1)(b), Plaintiffs and the Class would not have suffered this ascertainable loss of money.

98.     Pursuant to O.R.S. § 646.638(1), Plaintiffs (individually and on behalf of the Class) seek statutory damages in the amount of $200.

99.     Plaintiffs and the Class further seek an order declaring Defendants have violated OUTPA.

100.    Plaintiffs and the Class also seek equitable relief, an injunction, and attorneys' fees and costs. O.R.S. §§ 646.636 and 656.638.

101.    Injunctive relief is proper, as Plaintiffs would purchase the Product again, but only if Defendants cured the OUTPA violations identified herein and/or sold a Product that effectively treats all the indications identified (including nasal congestion).

### SECOND CAUSE OF ACTION

**VIOLATIONS OF THE UNLAWFUL TRADE PRACTICES ACT**
**Or. Rev. Stat. §§ 646.605,** *et seq.*
**Subsections 646.608(1)(e) and (1)(g): unlawful representations**

102.    Plaintiffs incorporate by reference paragraphs 1-68 and 81-86 as though fully set forth herein.

103.    Defendants violated O.R.S. § 646.608(1)(e) by representing that goods have characteristics, ingredients, quantities or qualities that the goods do not have. Similarly, Defendants violated O.R.S. § 646.608(1)(g) by representing that goods are of a particular standard, quality or grade when they are of another. Defendants represented their PE drugs as treating all the identified indications (including nasal congestion), when in fact this is not the case.

104.    A product having the characteristics or qualities of effectively treating all the indications identified (including nasal congestion)—which is how the PE Drugs are represented to all consumers—is inherently worth more than the actual PE Drugs purchased by Plaintiffs and the Class, which did not have this characteristic or quality.

105.    Defendants' violations of O.R.S. §§ 646.608(1)(e) and 646.608(1)(g) were willful as Defendants knew or should have known that the conduct complained of herein caused the PE Drugs to be misrepresented, and violated OUTPA.

106.    Defendants engaged in the misrepresentations complained of herein with the knowledge (and/or constructive knowledge) that their conduct was illegal at the time the representations at issue were created through the present.

107.    Further, Defendants recklessly and/or knowingly misrepresented the PE Drugs as having the characteristics or quality of effectively treating all the indications identified (including nasal congestion), which Defendants at all relevant times knew or should have known was not the

case.

108.    Defendants intended to misrepresent the PE Drugs as effectively treating all the indications identified (including nasal congestion), as Defendants were aware (or should have been aware) that they could charge more for such products than products that do not effectively treat the identified indications.

109.    The illegal conduct complained of herein was no isolated incident or one-time mistake; rather, it occurred over years with respect to every PE Drug manufactured, labeled, and sold by Defendants to Plaintiffs and the Class, which misrepresented the PE Drugs as having the characteristics or quality of effectively treating all the indications identified (including nasal congestion).

110.    Even after the vote of the FDA Advisory Panel, Defendants made no effort to refund either Plaintiffs or Class Members in response.

111.    As a result of Defendants' willful and knowing (and/or reckless) violations of O.R.S. §§ 646.608(1)(e) and/or 646.608(1)(g), described above, Plaintiffs and the Class suffered an ascertainable loss of money or property.

112.    Plaintiffs and the Class lost money due to the difference between the value of the PE Drugs as misrepresented by the Defendant, as inherently reflected in the purchase price, and the lesser value of the PE Drugs actually received by the Plaintiffs and the Class. Absent the Defendants' willful and knowing (and/or reckless) violations of O.R.S. §§ 646.608(1)(e) and/or 646.608(1)(g), Plaintiffs and the Class would not have suffered this ascertainable loss of money.

113.    Pursuant to O.R.S. § 646.638(1), Plaintiffs (individually and on behalf of the Class) seek statutory damages in the amount of $200.

114.    Plaintiffs and the Class further seek an order declaring Defendants have violated

OUTPA.

115.    Plaintiffs and the Class also seek equitable relief, an injunction, and attorneys' fees and costs. O.R.S. §§ 646.636 and 656.638.

116.    Injunctive relief is proper, as Plaintiffs would purchase the Product again, but only if Defendants cured the OUTPA violations identified herein and/or sold a Product that effectively treats all the indications identified (including nasal congestion).

**THIRD CAUSE OF ACTION**

**VIOLATIONS OF THE UNLAWFUL TRADE PRACTICES ACT**
**Or. Rev. Stat. §§ 646.605, *et seq.***
**Subsection 646.608(1)(i): false advertising**

117.    Plaintiffs incorporate by reference paragraphs 1-68 and 81-86 as though fully set forth herein

118.    Defendants violated O.R.S. § 646.608(1)(i) by advertising goods with intent not to provide them as advertised. Defendants consistently advertised the PE Drugs as treating all the identified indications (including nasal congestion), when in fact this is not the case.

119.    A product effectively treating all the indications identified (including nasal congestion)—which is how the PE Drugs were advertised to all consumers—is inherently worth more than the actual PE Drugs purchased by Plaintiffs and the Class, which did not effectively treat all the indication identified (including nasal congestion).

120.    Defendants' violations of O.R.S. §§ 646.608(1)(i) were willful as Defendants knew or should have known that the conduct complained of herein was an advertisement that did not conform to the true nature of the Product, and violated OUTPA.

121.    Defendants engaged in the false advertising complained of herein with the knowledge that their conduct was illegal at the time the said PE Drug advertisements were made.

122.    Further, Defendants recklessly and/or knowingly engaged in in the false advertising conduct.

123.    Defendants willfully and knowingly (and/or recklessly) advertised the PE Drugs as effectively treating the identified indications (including nasal congestion), which Defendants knew (or should have known) was false, and at no point did Defendants seek to provide a product in place of the PE Drugs as advertised to Plaintiffs and the Class.

124.    Defendants intended to engage in this false advertising without providing the PE Drugs as advertised were aware (or should have been aware) that they could charge more for such products than products that do not effectively treat the identified indications.

125.    The false advertising complained of herein was no isolated incident or one-time mistake; rather, it occurred over years with respect to every PE Drug manufactured, labeled, advertised and sold by Defendants to Plaintiffs and the Class.

126.    Even after the vote of the FDA Advisory Panel, Defendants made no effort to refund either Plaintiffs or Class Members in response.

127.    As a result of Defendants' willful and knowing (and/or reckless) violations of O.R.S. § 646.608(1)(i), described above, Plaintiffs and the Class suffered an ascertainable loss of money or property

128.    Plaintiffs and the Class lost money due to the difference between the value of the PE Drugs as illegally advertised by the Defendants, as inherently reflected in the purchase price, and the lesser value of the PE Drugs actually received by the Plaintiffs and the Class. Absent the Defendants' willful and knowing (and/or reckless) violations of O.R.S. § 646.608(1)(i), Plaintiffs and the Class would not have suffered this ascertainable loss of money

129.    Pursuant to O.R.S. § 646.638(1), Plaintiffs (individually and on behalf of the Class)

seek statutory damages in the amount of $200.

130.    Plaintiffs and the Class further seek an order declaring Defendants have violated OUTPA.

131.    Plaintiffs and the Class also seek equitable relief, an injunction, and attorneys' fees and costs. O.R.S. §§ 646.636 and 656.638.

132.    Injunctive relief is proper, as Plaintiffs would purchase the Product again, but only if Defendants sold the PE Drugs as advertised (effectively treating all the indications identified including nasal congestion).

## FOURTH CAUSE OF ACTION

## UNJUST ENRICHMENT

133.    Plaintiffs incorporate by reference paragraphs 1-68 as though fully set forth herein

134.    Plaintiffs and members of the Class may assert an unjust enrichment claim even though a remedy at law may otherwise exist; alternatively, Plaintiffs seek unjust enrichment in the alternative.

135.    As alleged herein, Plaintiffs and Class Members conferred a benefit on Defendants, the retention of which by Defendants would be unjust under the circumstances.

136.    First, the PE Drugs were misbranded and illegal to sell. Thus, Plaintiffs and Class Members conferred a benefit on Defendants by purchasing PE Drugs as part of an illegal transaction.

137.    Given these circumstances (an illegal sale), it would be unjust for Defendants to retain all profits earned by the illegal sale of the PE Drugs.

138.    Defendants were aware or should have been aware of the illegal nature of the sale (and by extension the inequitable benefit conferred upon them by Plaintiffs and the Class).

139.    Alternatively, even if the entire sale was not per se illegal, the Defendants received an inequitable benefit as measured by the difference between the price paid for a properly branded product that effectively treated nasal congestion and the lower market value the PE Drugs that were misbranded and/or failed to effectively treat nasal congestion.

140.    Given the circumstances of Defendants' knowing and willful conduct (as alleged herein), it would be unjust for Defendants to retain any portion of profits measured by this diminution in value.

141.    As alleged herein, Defendants were aware of this inequitable benefit conferred upon them by Plaintiffs and the Class, as Defendants were aware that they could charge more for products that effectively treat the identified indications (including nasal congestion) than products which do not.

142.    Plaintiffs and other Class Members are entitled to seek and do seek restitution from each Defendants as well as an order from this Court requiring disgorgement of the inequitable benefits conferred upon them by Plaintiffs and the Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the members of the Class defined herein, pray for judgment and relief on all Causes of Action as follows:

A.    An order certifying that the action may be maintained as a Class Action, appointing Plaintiffs as Class Representatives, and designating Plaintiffs' counsel as counsel for the Class;

B.    Injunctive relief against Defendants, directing Defendants to correct their practices in compliance with OUTPA;

C.      To pay actual and/or statutory damages of $200 to Plaintiffs and all members of the Class;

D.      Disgorgement of the amounts by which Defendants have been unjustly enriched;

E.      Pre-judgment interest from the date of filing this suit;

F.      Declaring that Defendants have committed the violations alleged herein;

G.      Reasonable attorneys' fees;

H.      Costs of this suit; and

I.      Such other and further relief as the Court may deem necessary or appropriate.

## <u>JURY DEMAND AND NOTICE TO ATTORNEY GENERAL</u>

Plaintiffs and the Class, by and through undersigned counsel, hereby request a trial by jury as to all issues so triable. Further, upon filing this action, this Complaint shall be mailed to the Attorney General of the State of Oregon, and proof of receipt of same shall be filed with this Court.

September 18, 2023                     Respectfully submitted,

                                      **THE CASEY LAW FIRM, LLC**


                             By:  */s/ M. Ryan Casey*
                                  M. Ryan Casey (OSB # 152824)
                                  ryan@rcaseylaw.com
                                  PO Box 4577
                                  Frisco, Colorado 80443
                                  Tel: (970) 372-6509
                                  Fax: (970) 372-6482

                                  *Counsel for Plaintiffs*